THOMAS A. FARRELL v. IRA KRUGER AND OTHERS.[1]

May 26, 1933.

No. 29,333.

[1]Reported in 248 N. W. 720.

*F. L.* and *E. V. Cliff,* for appellants.
*Murphy, Johanson, Winter & Nelson,* for respondent.

*WILSON, Chief Justice.*

Ira Kruger and Harold Kruger, two of the defendants herein, appealed from a judgment entered against them.

Plaintiff, a blacksmith 51 years of age, called on defendants at their office to collect a small bill which was later paid. A controversy arose, and plaintiff claims he was assaulted by appellants and seriously injured.

Plaintiff's version is that he presented the bill on January 30, 1930, and that while he was in defendants' office they used abusive language to him and violently pushed him up against the door-jamb; that he was forcibly ejected from the office and down a short stairway leading from the front door; that when he reached the ground both of the appellants attacked him and one or both ran at him a distance of about 20 feet and struck him; that plaintiff was hit on his shoulder and that one of appellants kicked him in the groin with one knee. Plaintiff was dazed by the attack. In the mix-up he stepped upon a piece of ice, causing his legs to spread apart, and he went down in a split. This happened at or near a place where ice had been recently loaded into cars. He apparently became unconscious, as he described his situation when he "came to." Plaintiff's stomach was injured, and he suffered hemorrhages of the bowels immediately after and pain in the stomach and bowel region. He suffered some injury to his kidneys, at least the urine was bloody, and he experienced frequent urinations. His right leg was injured

to the extent that he lost the use of it, and at the time of the trial in October, 1931, he still suffered pain in this leg and it tired easily. He was then still unable to stand on the injured leg to do ordinary blacksmith or forge work such as he had done prior to his injury. He was unable to work at all from January to July, 1930. He had apparently always earned a good income for one in his occupation. He had to discontinue automobile repair and blacksmith work, and at the trial his leg was getting worse and stiff and more useless. He then could not lift it sidewise and could not move it so as to cross the left leg.

Plaintiff testified that he went to see a doctor at about one a. m. on the morning following his injury. The doctor was called as a witness and confirmed the assertion that he was so consulted. He further testified that he found from his examination then made that plaintiff had a hemorrhage from the rectum originating over four inches up; that there was soreness in the neck and groin, clots of blood in the lower bowel, and that he complained of an injury to and pain in his head. The doctor noticed that plaintiff's trousers were split in the crotch, and plaintiff had testified on the trial that this happened when he did "the split." The doctor testified that at the time of the trial plaintiff could not flex the right leg sidewise and that he could not cross it over the other knee. The doctor attributed this condition to an injury of the obturator nerve, which is about one-third the size of a lead pencil at its largest part and which has to do with the muscles required for the absent movement. Every muscle is controlled by a nerve. This nerve is located perhaps one inch below the surface of the flesh and emerges from the pelvic bone at a place where plaintiff complained of pain. Such nerve may be injured by a blow, tearing, or impingements. The doctor stated a hemorrhage of the rectum could follow from a blow on the abdomen, as a hemorrhage results from a blood vessel being opened by tearing or a rupture. When a nerve is injured the muscles atrophy, and he found a shrinkage of three-fourths of an inch in plaintiff's right thigh. He gave the opinion that plaintiff would never recover from his leg injury.

Witness Holtquist called by plaintiff corroborated plaintiff's testimony in that he said he saw just some of the fight between these parties. He described one of the appellants as putting his hand up against plaintiff and using his knee at the same time, and "kind of shoved him away." What he saw was outside defendants' office at the place where plaintiff claims he went to the ground. Holtquist stood with a group of 10 or 15 men who had been working for the defendants and were waiting for an opportunity to go into the office for their pay checks. This group of men were in a position to see the trouble outside the office had they been looking in that direction. They were only about 20 or 30 feet away. Some of them, however, were in a standing box-car. Four of these men were called as witnesses by appellants, and one of them had seen the parties at the place of the alleged assault and had noticed they were arguing, but said that there was no assault. One of them said that plaintiff was swearing at appellants. One of them said one of the appellants had his hands up in the air and appeared to be separating plaintiff and the other appellant. One of them said that the men came out of the office and entered into a swearing controversy in which plaintiff and one of the appellants participated. Practically all of these bystanders saw trouble between the parties, but deny violence being inflicted upon plaintiff and deny that he fell to the ground.

The appellants deny that plaintiff was struck or even touched by either of them.

The jury returned a verdict in favor of plaintiff for $3,500, which the trial court conditionally reduced to $3,000. Appellants' motion for a new trial was denied. It was based upon the insufficiency of the evidence, excessive damages, and newly discovered evidence.

The evidence taken as a whole is not manifestly contrary to the finding of the jury, and it was not an abuse of discretion not to grant a new trial within the rule restated in National P. & T. Co. v. Gilkey, 182 Minn. 21, 233 N. W. 810. A verdict might well have been found for appellants. The evidence was of such character as to support a verdict either way. The jury exercised its prerogative

of believing whom it saw fit. The plaintiff's evidence did not contain such inherent improbabilities; neither was it weakened by the physical facts nor was there any documentary evidence to require its rejection as a matter of law. In our opinion it was sufficient to support the verdict.

■ The action is one involving exemplary damages upon the record. Plaintiff has suffered serious permanent injuries, incapacitating him for doing his work of a blacksmith as indicated. He has already suffered substantially by complete loss of time, and he has experienced pain and suffering. We are of the opinion that we cannot justify any further interference with the amount of the verdict, which as reduced is not in our judgment excessive. There is no evidence of passion and prejudice.

■ As one of the grounds for a new trial appellants assign newly discovered evidence. Accompanying the motion are affidavits from several of the bystanders in the group hereinbefore mentioned who in substance confirm the theory given by the appellants upon the trial. They in substance say that they saw the plaintiff come to defendants' office and heard him discussing with them the matter of paying a bill; that appellant Ira Kruger told him to take the bill to one Peterson for approval; that this talk was had outside the office; and that Harold Kruger came out of the office and took his father, Ira Kruger, by the arm and told him to come back into the office, at the same time giving the plaintiff directions to get the bill approved by Peterson and it would be paid. These several witnesses all deny that plaintiff was assaulted at the time and place claimed by him. Some of them say that soon thereafter he returned with Peterson and that the bill was paid and he then left unmolested. One of the affidavits is from a person whom plaintiff named as being present, and he says he was not there. Another affiant states that he was present but saw nothing. One of the persons making an affidavit states that he was in defendants' office at the time when plaintiff says he was forced up against the door-jamb, and this affiant denies that plaintiff was then and there subjected to such treatment. One or two persons make affidavits to the effect that

during the period in which plaintiff claims to have been suffering from the injuries resulting from the alleged assault he worked on an automobile as if nothing were wrong. In a later affidavit plaintiff admits that he did certain work on the car upon the condition that the other persons give such assistance as was necessary because of his infirmity.

These affidavits indicate testimony which would be cumulative.

Some affidavits in support of such application for a new trial indicate that back in 1918 plaintiff had told two or three persons that he had to give up blacksmithing and horseshoeing because he could not stand such heavy work. Other affidavits indicate that plaintiff in 1927, 1928, and 1929 had told persons that he was suffering from rheumatism, and one of them says he had stated to him that at one time he could not raise his arm above the shoulder. The statement was made in one of such affidavits that plaintiff in 1929 stated to affiant that he had just seen a doctor at Canistota, South Dakota, where he had received treatment for rheumatism, and that prior to going to see this doctor he was unable to raise his arm above his shoulder, but that after receiving this treatment he felt a great deal better. Plaintiff attempted to meet this affidavit and others by stating in his affidavit that he had made a trip to Canistota, South Dakota, in December, 1928, not 1929, for the purpose of taking one Mrs. Weed to be treated by a certain doctor at that place and while there the doctor examined him in and about his neck, for which he paid the doctor one dollar.

Accompanying the motion were affidavits to the effect that sometime during the years 1913, 1914, or 1915, while plaintiff was employed in a garage at Elbow Lake, Minnesota, he suffered an injury to his leg and was treated by Dr. F. L. Kling. This doctor in an affidavit states that he used cold applications on plaintiff to ease the pain, reduce the swelling, and keep the inflammation down. Dr. Kling says at that time plaintiff was rooming with a family by the name of Ole K. Pikope; that he had to remain in bed at Pikope's home for several days as a result of his injury; and that when he was able to be up he walked with a decided limp and carried a cane

for some time. The doctor further states he has the impression that this injury was to plaintiff's right leg, and he gives the opinion that the injury would cause such a disability and impairment as described by plaintiff in the trial of the case. The doctor's affidavit is supported by an affidavit from his wife, who states that at the time plaintiff was so injured at Elbow Lake she knew of the accident and later saw plaintiff on the street and noticed that he had a decided limp and carried a cane, and that she entertains a very decided impression his ailment was in his right leg.

Two other doctors have made affidavits that in their opinion plaintiff's condition is not due to the alleged assault.

The plaintiff in a rebuttal affidavit denies the statements of Dr. Kling and his wife, and his affidavit in reference thereto reads:

"Affiant denies the said affidavits and states that they are false and affiant says he never had any injury to either of his legs while at Elbow Lake during said times, and was never treated by said [Dr.] Kling and was never laid up on account of any such injury and never used a cane, and that said affidavits were prompted to be made on account of a difficulty between said Klings and affiant arising out of a loan of $10 made by affiant to them, which they have to this day failed to repay affiant."

Plaintiff also submitted in rebuttal an affidavit from one McConnell, who says that he was intimately acquainted with plaintiff when he worked at the Pioneer Garage at Elbow Lake as a blacksmith and saw him very frequently about the local hotel and at this garage, and affiant never saw him using a cane and never knew nor ever heard of his having been injured, and that during all the time plaintiff appeared in good health, well and active. He also states that he has recently inquired about and can learn of no one at Elbow Lake who ever heard that plaintiff suffered from any injury or accident while living at Elbow Lake.

One Henry Hessel also submitted an affidavit stating that he knew plaintiff when he worked for said garage and boarded at the same hotel and ate at the same table as plaintiff and that they often met several times a day. He states that he never saw plain-

tiff use a cane and never heard him complain of any accident or injury, and he states if plaintiff had met with an accident or injury during that period he would have heard of it.

One Henry A. Smith made an affidavit stating that on July 7, 1913, until the spring of 1914, he worked in a garage at Elbow Lake, and that during that period of time the plaintiff also was employed in the same shop and that he was then a very healthy and robust man. Smith says that he bought the shop in the spring of 1914. Smith states that between July 7, 1913, and when he bought the shop he is positive that plaintiff was never injured.

These affidavits are conflicting. The trial court in passing upon the disputed facts apparently resolved them in favor of the plaintiff.

We are of the opinion that the conclusion of the trial court must be and it is sustained.

Affirmed.

